IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAUQUASIA LEE, ) | |
| ) | |
| On behalf of herself and all others ) | |
| similarly situated, ) | |
| ) | Case No: 1:21-CV-00338 |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| R&L MANAGEMENT, INC. D/B/A ) | |
| THE CANDY STORE, ) | |
| ) | |
| Defendant. ) | |

## JOINT MOTION TO APPROVE SETTLEMENT

Plaintiff and Defendant Ritters Critters, Inc. d/b/a The Candy Store (collectively with Plaintiff, the "Parties") hereby notify the Court that the Parties have reached a carefully negotiated settlement of all claims and jointly move the Court for approval of the Parties' Settlement Agreement ("Agreement"). Based on the grounds set forth herein, the Agreement represents a reasonable compromise of disputed claims asserted under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201—219. ("FLSA"), and satisfies all other requirements for Court approval.

### I.    FACTS AND PROCEDURAL HISTORY

#### The Parties' Disputed Claims

1.    This lawsuit was filed on July 29, 2021 by Plaintiff, Lauquasia Lee, against R&L Management, Inc. (Doc. 1, PageID # 1). On October 25, 2021, Plaintiff amended her Complaint to substitute Defendant Ritters Critters, Inc. d/b/a/ The Candy Store ("Defendant") as the proper defendant. (Doc. 13, PageID # 41).

2. The Amended Complaint alleges that Defendant willfully violated the FLSA by misclassifying Plaintiff as an independent contractor, failing to pay Plaintiff minimum wage for hours she allegedly worked from June 2018 through December 2019, and requiring Plaintiff pay a "house fee" and/or "kickbacks" to Defendant's employees. (Doc. 13 at ¶¶ 29, 36-38, 46, PageID ## 45-47). The Amended Complaint included a claim for relief seeking the recovery of backpay, liquidated damages, and attorney's fees and expenses. (Doc. 13 at ¶ 4, PageID #42).

3. In addition to Plaintiff's individual claim, the Amended Complaint asserted claims filed on behalf of other alleged similarly situated individuals pursuant to the FLSA's collective action mechanism. (Doc. 13 at ¶ 1, PageID # 41)). Plaintiff did not request conditional class certification and no other plaintiffs have joined or attempted to join the lawsuit.

4. On October 19, 2021, Defendant filed its Answer to the Amended Complaint, denying that Plaintiff was improperly classified as an independent contractor, denying that the requirements of the FLSA applied, and denying that Plaintiff was required to tip or pay "kickbacks" to any of Defendant's actual employees. (Doc. 14 at ¶¶ 15-27, PageID ## 54-55). While Defendant disputed FLSA coverage, Defendant asserted in its Answer that even assuming Plaintiff was misclassified under the FLSA she suffered no damages because the compensation paid to Plaintiff well exceeded minimum wage. (Doc. 14 at ¶ 61, PageID ## 57-59). Defendant further denied the dates of Plaintiff's alleged "employment" and asserted that Plaintiff performed no services for Defendant after October 29, 2018. (Doc. 14 at ¶ 29, PageID # 55).

5. Defendant's Answer also included numerous affirmative defenses, including that Plaintiff's claims were entirely or mostly time barred and that even assuming, *arguendo*, Plaintiff could establish an FLSA violation, Plaintiff was not entitled to liquidated damages based on Defendant's good faith efforts to comply with the FLSA. (Doc. 14, PageID ## 58-60).

Additionally, Defendant expressly denied any willful violation of the FLSA and asserted that the two-year limitations period applied. (Doc. 14, PageID ## 58-60).

7. During written discovery, Plaintiff provided her calculation of backpay and hours she allegedly worked and claimed that she worked an average of 26 hours per week for 65 weeks (1,690 hours). According to Plaintiff's calculation, after including the alleged "kickbacks" she allegedly had to pay, Defendant owed Plaintiff $25,252.50 in backpay and an equal amount in liquidated damages for a total of $50,505.00 plus reasonable attorney's fees and expenses.

8. In response, Defendant provided its verified summary of the dates and hours Plaintiff performed services for Defendant and the amounts Plaintiff was paid on each date, which exceeded the minimum wage rate many times over. According to Defendant's verified summary, Plaintiff worked a total of 26 days averaging 6.5 hours per day (169 hours total) from September 9, 2018 through October 29, 2018 and received a minimum of, and usually significantly more than, $75.00 per day ($11.54 per hour) in tips and commissions. Based on Defendant's summary, and without claiming any offset for the amounts Plaintiff was paid in tips and commissions, Plaintiff's claim for unpaid minimum wage totaled $1,225.00 and with liquidated damages totaled $2,450.00.

9. In addition to producing information challenging Plaintiff's calculation of hours and backpay, Defendant produced an independent contractor agreement that Plaintiff signed on August 21, 2018 acknowledging she was not an employee and confirming her independent contractor status. Further, Defendant produced shift calendars from September-October 2018 showing the dates of Plaintiff's services to support Defendant's assertion that Plaintiff performed no work for Defendant in any capacity after October 29, 2018.

10. Plaintiff disputed the accuracy of Defendant's backpay calculation and verified

summary of Plaintiff's hours. Plaintiff also challenged Defendant's statute of limitations defense and asserted the evidence would establish a willful violation of the FLSA and, therefore, the three-year recovery period applied. Plaintiff stated she would rely on witness testimony from work colleagues to corroborate her claimed hours worked.

11.     Plaintiff believes her allegations, claims, and the grounds for challenging Defendant's defenses have merit.

12.     Defendant, on the other hand, vigorously denies Plaintiff's factual allegations and maintains that Plaintiff's claims fail on the issues of liability, willfulness/applicable recovery period and damages, including Plaintiff's claim for liquidated damages. With respect to liability, Defendant asserts that the credibility of Plaintiff's allegations of "employment" is belied by the independent contractor agreement she signed and additional evidence showing Defendant did not control the manner in which Plaintiff's services were provided or otherwise act as Plaintiff's "employer" according to controlling law.

13.     In sum, this matter involves hotly contested and disputed claims.

## **The Parties' Fair and Reasonable Compromise**

14.     In recognition of the expense, both in time and costs, and inherent uncertainty and risk of litigation as well as the potential difficulties and delays associated with further litigation, the Parties agreed to explore settlement.

15.     Over an approximate four-month period, the Parties candidly discussed the strengths and weaknesses of their respective positions. While Plaintiff urged what she perceived to be strengths in prevailing on liability, Defendant advanced what it perceived to be evidentiary defects in Plaintiff's claims that, if successful, would preclude most if not all of Plaintiff's recovery.

16.     After several rounds of arms-length negotiations and multiple compromises and concessions made by both Parties, the Parties agreed to resolve the Plaintiff's backpay and liquidated damages claim for the sum of $2,450.00 and to resolve Plaintiff's claim for attorney's fees and expenses for the sum of $8,000.00.

17.     The complete terms of the Parties' Agreement are set forth in full and in their entirety in the following Paragraphs 18 - 31.

## The Agreement (Settlement Terms)

18.     As used herein, "Plaintiff" shall refer to Lauquasia Lee and her heirs, representatives, agents, attorneys, representatives and/or assigns. "Defendant" shall refer to Ritters Critters Inc. d/b/a The Candy Store and any of its parent, subsidiary, successor and/or affiliate companies and/or its or their employees, representatives, agents, attorneys, officers, owners, principals, insurers and/or assigns.

19.     In the instant action, Plaintiff asserts that Defendant misclassified her as an independent contractor, failed to pay her minimum wage and willfully violated the FLSA. Defendant denies Plaintiff's allegations and asserts that Plaintiff was properly classified as an independent contractor, fully compensated and is owed nothing.

20.     Defendant understands that Plaintiff believes her claims have merit. Likewise, Plaintiff understands that Defendant firmly believes Plaintiff's claims are baseless and that Defendant has asserted numerous defenses that if successful would bar or drastically reduce Plaintiff's recovery.

21.     In recognition of the disputed claims and issues and to avoid the risks and costs of protracted litigation, the Parties desire to fully and finally resolve the disputes in this action with prejudice as to all counts, claims, and parties.

22. Accordingly, Defendant has agreed to pay settlement proceeds totaling $10,450.00 as follows: (i) backpay and liquidated damages totaling $2,450.00 payable to Plaintiff; and (ii) attorney's fees and expenses totaling $8,000.00 payable to Plaintiff's attorneys.

23. The settlement proceeds set forth in Paragraph 22 above shall be delivered within ten (10) days of the Court's approval of the settlement by delivering funds totaling $10,450.00 to the address of Plaintiff's attorney at: 8757 Georgia Avenue Suite 400 Silver Spring, Maryland 20910.

24. Plaintiff understands and agrees that no additional sums will be paid to her by Defendant for backpay, liquidated damages, attorney's fees or expenses, or other monetary damages of any kind.

25. The Parties agree the settlement payments in Paragraph 22 above are intended as compensation to Plaintiff and/or her attorney for services provided and, therefore, are subject to applicable income taxes. Plaintiff understands and agrees that Defendant has not withheld employment taxes or deducted any amounts from the settlement payments and that Plaintiff is solely responsible for complying with federal and state tax requirements, including reporting requirements and the payment of income tax associated with the settlement payments. Plaintiff agrees to hold harmless and indemnify Defendant against any tax assessments or penalties that may be owed as a result of the settlement payments or Plaintiff's failure to comply with applicable tax reporting and payment requirements.

26. To facilitate the settlement payments under Paragraph 22, Plaintiff agrees that she first will provide Defendant with a completed Form W-9 for Plaintiff and her attorneys. Upon issuing the settlement payments, Defendant agrees to report the payments in a Form 1099 issued to Plaintiff and/or her attorneys.

27.  Plaintiff understands and agrees that Defendant has not admitted liability or wrongdoing, that it has in fact denied any liability or wrongdoing, and that this settlement is not and cannot be construed as an admission by Defendant of liability or wrongdoing of any kind. Rather, Plaintiff acknowledges that this settlement is a compromise of disputed claims entered into solely to avoid protracted litigation and further disputes or controversies about any of the matters asserted in Plaintiff's Complaint and/or Amended Complaint and that nothing in this Agreement shall be construed as an admission that is Plaintiff is the prevailing party under the FLSA.

28.  Plaintiff represents and warrants that she has not assigned the claims asserted in this action to any third party.  Plaintiff also represents that she has not contacted any alleged similarly situated individual for the purpose of assisting such individual with filing a claim against Defendant.  Plaintiff understands and agrees the representations in this Paragraph are a material condition to the Agreement.

29.  The Parties further agree: (a) Plaintiff and Defendant are each represented by competent counsel who have explained the terms of this Agreement; (b) Plaintiff and Defendant fully understand this Agreement; (c) Plaintiff and Defendant have consulted with their respective counsel and have entered into this Agreement knowingly and voluntarily; and (d) Plaintiff and Defendant have authorized their respective counsel to sign this Agreement on their behalf binding Plaintiff and Defendant to its terms.

30.  By authorizing her attorneys to sign this Agreement, Plaintiff intends, among other things, to resolve, discharge, and release, with complete finality, any claims that Plaintiff has or may claim to have against Defendant with regard to Plaintiff's claims asserted or could have asserted in this action or for compensation, including unpaid wages of any kind, liquidated damages, and

attorney's fees and expenses.

31. The Parties agree that if this Agreement is approved by the Court the instant action shall be dismissed with prejudice with each party to bear her or its own costs.

## II. CONTROLLING LAW

Individuals can settle claims brought under the FLSA in two ways. First, claims under the FLSA may be settled if the Secretary of Labor supervises the payment of unpaid wages by the employer. 29 U.S.C.A. § 216(c); Lynn Food Stores v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982). Second, and as applicable here, in the context of a private lawsuit, claims may be settled and released if the court approves the fairness of the settlement. Lynn's Food Stores, 679 F.2d at 1353 (noting that in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness.").

In discussing the reasons for requiring court approval of an FLSA settlement, the Eleventh Circuit has explained:

> [S]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. *If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

Id. at 1354 (emphasis added). When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. Lynn's Food Stores, 679 F.2d at 1353;

Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977).

With regard to attorney's fees, when the fee is negotiated separately and without regard to the amount paid to the plaintiff, absent an apparent adverse impact on the plaintiff's recovery the Court's scrutiny is not required. See Crabtree v. Volkert, Inc., 2013 WL 593500, at *7 n.4 (S.D. Ala. 2013) (noting district court authority finding scrutiny of agreed-upon attorney's fees to be unnecessary where fee was agreed upon separately and without regard to amount paid to plaintiff, except in circumstances where " 'the settlement does not appear reasonable on its face or there is reason to believe plaintiff's recovery was adversely affected by the amount of fees paid to his attorney.' ") (quoting Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

### III. LEGAL ANALYSIS

**The Agreement Is Fair to All Parties and Should Be Approved.**

The Parties agreed to settle their claims pursuant to the terms of the Agreement in recognition of the risks inherent in any litigation – specifically, for Plaintiff, the risk of no recovery, and for Defendant, the risk of an adverse verdict on the merits. Because of these risks and disputed issues, the Agreement, which provides adequate compensation to the Plaintiff and reimbursement of reasonable fees and costs, represents a fair and reasonable compromise.

First, the Agreement reflects a compromise of issues actually in dispute and was reached in an adversarial context in which Plaintiff was represented by competent and experienced employment counsel. As described, *supra*, at § I, the Parties vigorously disputed the merits of this case. Further, the Parties engaged in arms-length settlement discussions based on their independent calculations and analysis of the evidence and applicable law, ultimately reaching a mutually agreeable resolution to pay Plaintiff and her attorneys $10,450.00.

The settlement amount represents a significant mutual compromise by both Parties. Indeed, Plaintiffs' claimed damages (excluding attorneys' fees) exceeded $50,000.00. Defendant consistently maintained Plaintiff was properly classified and compensated for any hours worked and was owed nothing. Further, Defendant asserted that even assuming Plaintiff prevailed on liability Plaintiff's maximum recovery based on the dates she actually worked totaled $2,450.00. The agreement to pay Plaintiff $2,450.00 represents a compromise that reflects the Parties' careful consideration of the risks and uncertainties they both faced if litigation continued and for the Plaintiff, her desire to expedite receipt of compensation.

Plaintiff's claims for attorney's fees and expenses were negotiated separately from Plaintiffs' claims for backpay and liquidated damages. In an effort to expedite payment to Plaintiff while avoiding the additional costs and delays associated with fee petitions and continued litigation, the Parties agreed Plaintiff's attorneys would accept a reduced fee in the amount of $8,000.00. The agreement to reduce Plaintiff's attorneys' fees did not negatively affect, and in fact, benefitted Plaintiff's recovery. Indeed, the compromise on fees facilitated the Parties' final resolution of all claims.

Counsel for the Parties affirm that they have authority from their respective clients to settle all claims in this matter pursuant to the specific terms set forth in the Agreement and that there are no other settlement terms that have not been stated in the Agreement.

## IV.   CONCLUSION

Based on the foregoing, the Parties respectfully request that the Court accept and approve the Agreement as a fair and reasonable compromise of disputed issues under the FLSA and enter an Order GRANTING this joint motion and DISMISSING this action in its entirety, with prejudice, with each party to bear her or its own costs.

Respectfully submitted this the 11th day of April 2022,

*/s/ Roy Lyford-Pike*
ROY LYFORD-PIKE, ESQ. (Maryland Bar No. 19846)
*Admitted Pro Hac Vice*

ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue
Suite 400
Silver Spring, Maryland 20910
Telephone: (301) 587-9373
Email: rlpike@zagfirm.com

GINGER POYNTER, ESQ. (Alabama Bar No. 3967-I44P)
THE LAW OFFICE OF GINGER POYNTER, LLC
207 Church Street
Mobile, Alabama 36602
Telephone: (251) 445-8313
Email: ginger.poynter@hotmail.com

**Attorneys for Plaintiff Lauquasia Lee**

*/s/ Anne Laurie McClurkin*
ANNE LAURIE McCLURKIN (MCCLA2262)

MAYNARD COOPER & GALE
11 N. Water Street
Suite 24290
Mobile, Alabama 36602
Telephone: (251) 206-7448
Email: AMcclurkin@maynardcooper.com

**Attorney for Defendant Ritters Critters, Inc. d/b/a/ The Candy Store**